909 So.2d 1038 (2005)
STATE of Louisiana, Appellee
v.
Erica M. BOWERS, Appellant.
No. 39,970-KA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 2005.
*1041 William J. Franklin, for Appellant.
J. Schuyler Marvin, District Attorney, Edward C. Jacobs, Assistant District Attorney, for Appellee.
*1042 Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, J.
The defendant, Erica M. Bowers, was charged by bill of information with the armed robbery of Calvin Brown, a JCPenney store employee, in violation of LSA-R.S. 14:64. After a jury trial, the defendant was found guilty as charged. The trial court denied the defendant's motion for new trial. Subsequently, she was sentenced to serve 30 years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The defendant's motion to reconsider sentence was denied by the trial court. The defendant now appeals. For the following reasons, the defendant's conviction and sentence are affirmed.

FACTS
At approximately 5:00 p.m. on March 29, 2003, the defendant and her companion, Toledo Prim, entered the JCPenney store located in the Pierre Bossier Mall in Bossier Parish. Calvin Brown, the loss prevention manager for the store, observed the defendant selecting several items from the juniors department in a suspicious manner, i.e., she randomly selected merchandise without looking at the prices. According to Brown, the defendant took several items, including blue jeans, into an empty fitting room. When she exited the fitting room a short time later, she was not carrying any of the items in plain view, but her purse was "noticeably bigger." The defendant did not leave any items in the fitting room.
Brown watched the defendant for three or four more minutes as she went to the sports shoes department near the Beckett Street exit. There, the defendant met her companion and they proceeded toward the store exit. When the defendant noticed mall security and Bossier City police officers outside, she turned and began walking back toward the fitting room. While mall security detained the defendant's companion, Brown followed the defendant back into the fitting room. He watched her take merchandise out of her purse and discard it on the floor as she protested, "I didn't do anything." Brown instructed the defendant that she needed to come back with him or he would place her in handcuffs. The defendant, who became loud and belligerent, pulled a handgun out of her pocket, waved it in the air and warned Brown, "You had better move." Brown immediately stepped back. He testified that he was intimidated and feared for his safety and the safety of the store patrons. Brown warned the police and security officers over his radio that the defendant had a gun.
As the defendant proceeded toward the store exit, she was detained by Bossier City Police Officer Joel Frentress and advised of her Miranda rights. Officer Frentress discovered the handgun underneath a clothing rack located directly in front of the defendant. The handgun was apparently unloaded. The defendant was already in custody when Detective Cordell Williams of the Bossier City Police Department arrived on the scene. Detective Williams performed a search of the defendant's purse incident to her arrest. The purse contained two pairs of blue jeans which were identified by Detective Williams at trial and introduced into evidence without objection.
Detective Williams witnessed Officer Frentress advise the defendant of her Miranda rights. Detective Williams also advised the defendant of her Miranda rights, questioned her at the scene and then transported her to the police department. The defendant initially gave Detective Williams a fictitious name when she was *1043 questioned and signed that name to a Miranda rights card, but she later gave her correct name and signed the correct name to a second Miranda rights card. After being advised of and waiving her Miranda rights for the third time, the defendant gave a taped statement to Detective Williams. She confessed that she had gone to the store to shoplift and produced a gun when she was caught. However, the defendant stated that she never left the store with the merchandise and she did not point the gun at Brown. The rights cards and the confession were admitted into evidence at trial without objection. Detective Williams testified that the defendant was not threatened, forced or coerced in any manner to make the confession. He stated that she appeared to know what was going on and to be in control of herself.
The defendant testified on her own behalf at trial, admitting that she went into the store to shoplift. However, she asserted that she emptied her purse of all of the merchandise before attempting to exit the store the second time. The defendant also claimed that she pulled out the gun to get rid of it, and denied using the gun to intimidate or scare Brown.
After the jury trial, the defendant was found guilty as charged by a vote of 10 to 2, and the court ordered a presentence investigation report ("PSI"). The defendant's motion for a new trial was denied.
At the defendant's sentencing hearing, the trial court noted that the PSI showed that the defendant was a fourth felony offender. The court described her criminal history as a "whole laundry list" of convictions, including numerous felony and misdemeanor theft matters since 1991, and the instant armed robbery conviction. The trial court observed the manner in which the instant crime escalated from shoplifting to armed robbery because of the defendant's "lack of judgment." The court also noted the defendant's age of 36 years. The trial court further noted the defendant's pending charges for felony theft, forgery, manslaughter and hit and run in Caddo and Bossier Parishes, but stated that it was not taking those charges into consideration in the defendant's sentencing for the instant crime. The defendant expressed remorse for the crime and her lack of intent to harm anyone, and requested "mercy" because her mother was caring for her eight children. The trial court responded that the defendant had been repeatedly "forgiven" and her "time has run out." The court then sentenced the defendant to serve 30 years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The defendant's motion to reconsider sentence was denied. This appeal followed.

DISCUSSION

Sufficiency of the Evidence:
By this assignment of error, the defendant contends the evidence presented at trial was insufficient to support the jury's verdict of armed robbery. The defendant argues that nothing of value was taken from the person of another or that was under the immediate control of another by the use of force or intimidation. She quotes a portion of Brown's testimony that he witnessed the defendant discarding merchandise from her purse onto the fitting room floor. The defendant notes that the arresting officer, Officer Frentress, testified that he did not search the defendant. The defendant asserts that the only other evidence with regard to the location of the jeans at the time of the arrest was Detective Williams' testimony that he conducted a search incident to the defendant's arrest and found two pairs of jeans in her purse. She argues that neither Detective Williams nor Brown ever identified the *1044 jeans as the property of JCPenney, and thus, the state failed to prove all of the essential elements of armed robbery beyond a reasonable doubt.
The defendant's challenge of the sufficiency of the evidence to support her conviction is an issue properly raised in the trial court by a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. art. 821. Although the record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
When issues are raised on appeal both with regard to the sufficiency of the evidence and with regard to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing the sufficiency of the evidence first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson v. Virginia, supra, standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony with regard to factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writ denied, 2002-2595 (La.3/28/03), 840 So.2d 566, and writ denied, 2002-2997 (La.6/27/03), 847 So.2d 1255.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *1045 State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, and writ denied, XXXX-XXXX (La.6/26/98), 719 So.2d 1048.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. A "taking" is defined as "the slightest asportation" of anything of value. State v. Cittadino, 628 So.2d 251 (La.App. 5th Cir. 1993). "Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value. LSA-R.S. 14:2(2). A "dangerous weapon" includes any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. LSA-R.S. 14:2(3). A gun used in connection with and at the scene of a robbery is as a matter of law a dangerous weapon. State v. Refuge, 300 So.2d 489 (La.1974). If property is taken from the victim's presence by intimidation with a dangerous weapon, it is sufficient to sustain a conviction of armed robbery. State v. Toney, 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387. Force or intimidation may be applied at any time in the course of the crime in order to complete the offense of armed robbery. State v. Jagers, 34,684 (La.App. 2d Cir.5/9/01), 786 So.2d 284, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 831.
Armed robbery is a general intent crime, requiring that the defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his or her act or failure to act. State v. Tolliver, 35,930 (La.App. 2d Cir.5/8/02), 818 So.2d 310.
At trial, the state presented testimonial and physical evidence to prove that the defendant robbed Brown while armed with a gun. Brown testified that his duties included protecting the store's merchandise from shoplifters. He testified that he observed the defendant's suspicious behavior with the merchandise, determined that the defendant was a shoplifter and contacted the mall security and the police. According to Brown, after the defendant's first attempt to leave the store, Brown followed the defendant back to the fitting room where she took merchandise out of her purse. When Brown confronted the defendant, the defendant pulled out a gun and warned Brown that "[he] had better move." Brown testified that he stepped back, and he was intimidated and feared for his own safety.
As the defendant proceeded to leave for the second time, she was arrested by Officer Frentress. Officer Frentress testified that he retrieved the gun discarded by the defendant in the store. Detective Williams testified that while at the store, he searched the defendant's purse incident to her arrest and found two pairs of jeans, which he identified at trial. Detective Williams further testified that after the defendant waived her Miranda rights, she admitted that she had gone to JCPenney to shoplift and produced the gun when she was caught.
The state played the defendant's taped confession for the jury. The defendant admitted that she went to the store to shoplift, but denied having any merchandise in her purse when she attempted to leave the store or using the gun to intimidate or scare Brown.
As stated above, the appellate court does not assess the credibility of the witnesses or reweigh the evidence. State v. Smith, supra. A reviewing court accords great deference to a jury's decision to accept *1046 or reject the testimony of a witness in whole or in part. State v. Gilliam, supra.
After a thorough review of this record, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could reasonably conclude that all of the elements of the offense of armed robbery were proved beyond a reasonable doubt. See Jackson v. Virginia, supra; State v. Hearold, supra; State v. Bosley, supra. The facts established by the direct evidence, including the physical evidence and the testimony of the store employee and arresting and investigating police officers, and the facts inferred from the circumstantial evidence, prove beyond a reasonable doubt that the defendant took something of value belonging to JCPenney that was in the immediate control of its employee, by use of force and/or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. See State v. Sutton, supra; State v. Owens, supra. This assignment of error lacks merit.

Voluntariness of Confession:
By this assignment of error, the defendant contends the trial court erred in refusing to suppress her confession. The defendant argues that she was intoxicated from the recent use of alcohol and cocaine when she committed the charged offense and when she confessed to Detective Williams. The defendant argues that although she mentioned during her confession that she had been drinking alcohol and using drugs prior to the commission of the instant offense, Detective Williams did not make any effort to determine if she was in a condition to understand and waive her rights. The defendant concludes that the state failed to meet its burden of proving that her statement was free and voluntary.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Roddy, 33,112 (La.App. 2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Roddy, supra; State v. Walker, 28,577 (La.App. 2d Cir.10/4/96), 681 So.2d 1023.
In State v. Jackson, 381 So.2d 485 (La.1980), and State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, any confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. State v. Roddy, supra.
In Louisiana, the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces, but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Roddy, supra.
The admissibility of a confession is a question for the trial court. State v. Roddy, supra. When determining admissibility, the trial court's conclusions on the credibility and weight of the testimony with regard to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Roddy, supra; State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992), citing State v. Jackson, supra. We place great *1047 weight upon the trial court's factual determinations because of its opportunity to observe the witnesses and assess credibility. State v. Roddy, supra; State v. Crews, 28,153 (La.App. 2d Cir.5/8/96), 674 So.2d 1082. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Henderson, 31,986 (La.App. 2d Cir.8/18/99), 740 So.2d 240. See State v. Trotter, 37,325 (La.App. 2d Cir.8/22/03), 852 So.2d 1247, writ denied, 2003-2764 (La.2/13/04), 867 So.2d 689.
Intoxication may render a confession involuntary if it negates a defendant's comprehension and renders him unconscious of the consequences of what he is saying; whether intoxication exists and to a degree sufficient to vitiate voluntariness are questions of fact. State v. Bourque, 622 So.2d 198 (La.1993); State v. Narcisse, 426 So.2d 118 (La.1983). However, the mere fact of drug or alcohol intoxication is insufficient standing alone to render a confession involuntary. See State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012 (confession voluntary although defendant had smoked three or four cocaine rocks the night before his 11:00 p.m. statement, as well as consumed several beers the day he confessed).
During the trial, a hearing was held outside the presence of the jury to determine whether the defendant's confession was freely and voluntarily given. Detective Williams testified that he read the defendant her Miranda rights and she indicated that she understood them. She also signed a Miranda rights card. Williams stated that the defendant did not appear in any sort of intoxicated condition. The defendant then gave a statement, which was recorded and transcribed. Williams, who was present during the statement, testified that the defendant was not intimidated, nor were any inducements made to convince her to give the statement outside the presence of a lawyer. On cross-examination, Williams admitted that the defendant told him that she and her companion had been using drugs and drinking alcohol prior to entering the store. Although Williams did not perform any standard field sobriety tests on the defendant, he noted that she spoke and answered questions properly and did not appear to be impaired. According to Williams, the defendant's speech was not slurred and she was not stumbling around "like a drunk" or throwing up. Detective Williams testified that the defendant was also "sober enough" to initially give a false name in an effort to avoid being arrested on outstanding warrants.
The trial court found that based on Detective Williams' testimony, the defendant "knew what she was doing completely at the time," and that the defendant was advised of her Miranda rights and signed the rights card before her statement was taken. The court ruled that the defendant's custodial confession, made after her arrest, was voluntary and admissible into evidence. No objection was made to the ruling. Thereafter, the state introduced into evidence at trial the defendant's taped statement and her Miranda rights card. The defense stated that it had "no objection" to the introduction of the evidence.
The state correctly notes that the alleged irregularity or error, with regard to the admissibility of the defendant's statement, was not objected to at the time of occurrence. Therefore, it cannot be availed of after the verdict. See LSA-C.Cr.P. art. 841; State v. Bosley, supra; State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (La.1990).
In any event, a review of the record reveals that before the confession *1048 was introduced into evidence, the state affirmatively proved that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Roddy, supra. At the hearing, the state established by direct evidence that the defendant was first advised of her Miranda rights before custodial interrogation no less than three times, and the defendant understood and waived those rights before giving her statement. See State v. Roddy, supra; State v. Walker, supra. Furthermore, the defendant's claim that voluntary intoxication rendered her confession involuntary is not supported by the record. There is no evidence that the defendant's comprehension was negated, nor that she was rendered unconscious of the consequences of her statements. To the contrary, Detective Williams testified that the defendant was "sober enough" that she gave a false name to avoid being arrested for outstanding warrants. Thus, the record supports the trial court's determination that the defendant was not impaired when she gave her statement and that her statement was freely and voluntarily given. See State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044; State v. Bourque, supra; State v. Narcisse, supra. Consequently, we find that the trial court did not err in admitting the defendant's statement into evidence. This assignment of error lacks merit.

Excessiveness of Sentence:
By these assignments of error, the defendant contends the trial court erred by imposing an excessive sentence. The defendant argues that the facts of this case do not warrant a 30-year sentence for a woman caring for eight children and her mother. The defendant notes that she exhibited a high level of remorse for her actions, even though she was charged and convicted of a crime where the facts do not support the conviction. The defendant argues that the sentencing court did not consider any mitigating factors in imposing the 30-year sentence. She cites in mitigation that no one was injured and the gun was unloaded. She also argues that her prior convictions were for non-violent crimes. Lastly, the defendant argues that the 10-year minimum sentence for armed robbery is more appropriate to the circumstances of this case.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, *1049 writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App. 2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993).
Prior to imposing sentence, the trial court considered a PSI which provided a thorough summary of the defendant's social and criminal history. The record indicates that the trial court noted the same matters urged by the defendant, i.e., her age, criminal history and the circumstances surrounding the instant offense. Also, the record indicates that the defendant expressed remorse for the crime and made the trial court aware of her family situation before her sentence was imposed. Thus, the record reflects a more than adequate consideration of the statutory guidelines.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.5/12/04), 873 So.2d 939.
On this record, we do not find constitutional error. The defendant is a fourth felony offender with several prior convictions for felony and misdemeanor theft in addition to pending charges for crimes such as felony theft, forgery, manslaughter and hit and run. The record does not reflect that the state filed a habitual offender bill of information against the defendant.
The instant crime of armed robbery is punishable by imprisonment at hard labor for not less than 10 years nor more than 99 years, without the benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64. Thus, the defendant was sentenced to serve approximately one-third of the 99-year maximum sentence.
The record does not support the defendant's contention that her 30-year sentence is out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, supra. Based on the circumstances of the instant offense and the defendant's criminal record, we find that the sentence is neither grossly disproportionate to the severity of the offense of conviction nor is it shocking to our sense of justice. State v. Hogan, supra; State v. Bradford, supra. The defendant's sentence is not excessive. These assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.